CARRINGTON, COLEMAN,
SLOMAN & BLUMENTHAL, L.L.P.
Mike Birrer (Texas Bar No. 00783662)
mbirrer@ccsb.com
(*Admitted Pro Hac Vice*)
Kelli Hinson (Texas Bar No. 00793956)
(*Admitted Pro Hac Vice*)
khinson@ccsb.com
Jordan R. Brownlow (Texas Bar No. 24120729)
jbrownlow@ccsb.com
(*Admitted Pro Hac Vice*)
901 Main Street, Suite 5500
Dallas, Texas 75202
Telephone:     214-855-3000
Facsimile:      214-580-2641

DOWNEY BRAND LLP
CASSANDRA M. FERRANNINI (Bar No. 204277)
cferrannini@downeybrand.com
DARIA A. GOSSETT (Bar No. 316717)
dgossett@downeybrand.com
621 Capitol Mall, 18th Floor
Sacramento, California 95814
Telephone:     916-444-1000
Facsimile:      916-444-2100

Attorneys for Defendant
MARTIN MARIETTA MATERIALS, INC.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| AUSTEN SHWIYHAT, on behalf of himself and the State of California as a private attorney general,<br><br>Plaintiff,<br><br>v.<br><br>MARTIN MARIETTA MATERIALS, INC., a North Carolina corporation, and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 23-CV-00283-JSC<br><br>**DEFENDANT'S REPLY TO PLAINTIFF'S MEMORANDUM AND POINTS OF AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:     October 5, 2023<br>Time:    10:00 a.m.<br>Crtrm.:   8 |

## I. INTRODUCTION

During the Case Management Conference, the parties agreed preemption might be quickly decided with little discovery. The Court, thus, entered an order setting only stipulation and summary judgment deadlines. Plaintiff's Response now claims that it's necessary to conduct discovery on a location-by-location basis to assess preemption. He's essentially requesting job-level analysis for each location (some of which have been sold to other companies). Plaintiff concludes, if the Court "feels obligated" to decide preemption, Plaintiff requests "the Court deny…Partial Summary Judgment, retain jurisdiction, and open full discovery." ECF 56, p. 1. The obligation to decide is not a feeling. As already determined, the LMRA creates subject-matter jurisdiction which makes federal courts responsible for assessing LMRA preemption claims.

Looking for an exit via Plaintiff's pending motion to remand, Plaintiff's Response ignores substantial portions of Defendant's partial summary judgment and mainly (and incorrectly) argues Martin Marietta's failure to put on location-by-location evidence from on-site management dooms summary judgment. Not true. Martin Marietta has provided declaration testimony from employees with years and years of experience working with these locations, negotiating the underlying CBAs, and interacting with plant management on employee issues from orientation to termination. The declarations are relevant, admissible evidence.

Faced with the law, Plaintiff ignores a number of preemption arguments and never contradicts key facts—such as the nature of the job sites, the CBAs, or the job descriptions. This shows that partial summary judgment has been established and should be granted. But if the Court believes extensive discovery is needed in order to decide, Martin Marietta agrees that the case must remain in federal court.

## II. RESPONSE TO PLAINTIFF'S MATERIAL FACTS

Key material facts include: (1) whether certain union members are employed as "commercial drivers" or in "construction occupations" (ECF No. 36, p. 5-9 [Def. Mot., § V(A)(1)]), (2) whether certain union members work on-site at a mining or construction facility (ECF No. 36, p. 9-11 [Def. Mot. § V(A)(2)]), and (3) the weight or commercial driver's license requirement for ready-mix trucks (ECF No. 36, p. 12-13 [Def. Mot. § V(C)].

Plaintiff's Response does not provide evidence analyzing these fact questions. Rather, Plaintiff argues there's effectively no evidence on key points because Declarant Mark Epstein and Declarant Tricia Reedy lack sufficient knowledge to identify basic job duties and other matters. Yet, personal knowledge is inferred from the declarant's role in the company, their participation in certain matters, and their statements explaining the basis for their knowledge. *Persian Gulf Inc. v. BP W. Coast Prods. LLC*, 632 F. Supp. 3d 1108, 1128–29 (S.D. Cal. 2022). Epstein and Reedy's work histories and testimony show they have the backgrounds and knowledge needed to support their respective declarations.

### 1. Epstein's work history supports his declarations.

The Epstein Declaration authenticates the applicable CBAs and identifies the location and type of facility at each location. ECF No. 39 (Epstein Dec. ¶ 2-4, 10-11). The Declaration identifies how the CBAs classify employees and basic duties under those classifications. ECF No. 39 (Epstein Dec. ¶ 4-11). And the Declaration identifies the union employees who work on-site at their respective locations. ECF No. 39 (Epstein Dec. ¶ 12). Epstein also references his earlier declaration that shows the CBAs meet the qualifying requirements. ECF No. 29 (Epstein Dec. ¶ 3, 6, 12). And both declarations show these CBAs cover the employees working at the Martin Marietta locations identified in the response—the aggregate quarries at Sunol, Tidewater, Clayton, and Irwindale. ECF No. 29 (Epstein Decl. ¶¶ 3–11); ECF No. 56, p. 4 (Pl. Resp.).[1] These are the building blocks that show the applicable union employees are construction workers, commercial drivers, or work on-site at construction or mining facilities. As shown below, Epstein's declaration is within his knowledge, experience, and work history.

Epstein has been the company's Labor Relations Manager/Senior Labor Relations Manager for 15 years. ECF No. 57-4, p. 20 (Depo. 20:1-21:12); ECF No. 39, p. 2 (¶1-2). As such, he negotiates and administers the various CBAs and interacts with the unions and the NLRB to interpret those CBAs. ECF No. 57-4, p. 26 (Depo. 26:10-19). Epstein, thus, has the personal

---

[1] Plaintiff's Response mentions Tehachapi, Lake Elsinore, and Coachella Valley, but the summary judgment motion does not seek relief for union members at those locations.

knowledge necessary to testify about union jobs and work conditions created under the very CBAs that he negotiates, administers, and interprets on behalf of the company. *See Peterson v. AT & T Umbrella Ben. Plan No. 1*, No. C-10-03097 JCS, 2011 WL 5882877, at *9 (N.D. Cal. Nov. 23, 2011) (overruling FRE 602 objection where "both declarations indicate that these individuals have personal knowledge . . . by virtue of their job responsibilities."); *Wright v. A.W. Chesterton Co. Inc.*, No. C07-05403 MJJ, 2008 WL 512728, at *3 (N.D. Cal. Feb. 25, 2008) (challenged statements admissible because declarant gained personal knowledge through the underlying contract negotiations); *Siebert v. Gene Sec. Network, Inc*, 75 F. Supp. 3d 1108, 1115 (N.D. Cal. 2014) (overruling Rule 602 objection where the declarant's job duties required her to be aware of the employer's policies, regulations, and documents underlying her testimony).

### 2. Reedy's work history supports her declaration.

The Reedy Declaration authenticates the written job descriptions that apply to union employees at Martin Marietta's aggregate quarries. ECF No. 38 (Reedy Dec. ¶ 7(a)-(g)). The Declaration also identifies certain union members who perform grading and paving work under a contract with the California Department of Transportation. ECF No. 38 (Reedy Dec. ¶ 8). And sets forth the commercial drivers' license requirements for Martin Marietta ready-mix drivers and the weight of ready-mix trucks (over 27,000 pounds). ECF No. 38 (Reedy Dec. ¶ 5). As shown below, these facts are within Reedy's knowledge, experience, and work history.

Reedy has been a member of the company's Human Resources Department for twenty-five years and has been the Human Resources Manager since 2013. ECF No. 57-4, p. 74 (Depo. 74:4-20). She advises supervisors on how to handle employees and when to discipline. ECF No. 57-4, p. 79 (Depo. 79:10-16). She works with quarry management to determine how to correct performance problems, and she must understand employee job duties to provide that advice. ECF No. 57-4, p. 131-32 (Depo. 131:24-132:8). She has observed the creation of ready-mix concrete and gone on a ride-along with a ready-mix driver. ECF No. 57-4, p. 93-95, 98, 133 (Depo. 93:24-95:17, 98:8-18, 133:7-18). She recruits and interviews job applicants, and through the years, she has interviewed a couple hundred ready-mix driver candidates. ECF No. 57-4, p. 79, 82, 134 (Depo. 79:23-25, 82:13-25, 134:7-20). Over her 25 years with the company, she has visited

numerous ready-mix facilities and quarries.  ECF No. 57-4, p. 86-88, 131 (Depo. 86:9-88:20, 131:5-13).  And when visiting quarries and facilities, Reedy performs numerous tasks such as orientation, safety meetings, employee training, and employee terminations.  ECF No. 57-4, p. 88-89 (Depo. 88:21-89:17).  As Reedy summarized, "from the years that I've worked here, from the numerous site visits . . . and plant tours that I've been on throughout the years. And from being in staff meetings where the managers talk about the different operations and the goings on the quarries and things like that. So, kind of, I just absorbed it over the years, plus knowledge by actually visiting the place." ECF No. 57-4, p. 117 (Depo. 116:10–18). Reedy has the work experience and knowledge necessary to authenticate Martin Marietta job descriptions, discuss employee duties, identify driver license requirements, and other facts related to ready-mix operations.[2]  *See Peterson*, 2011 WL 5882877, at *9; *Wright*, 2008 WL 512728, at *3; *Siebert*, 75 F. Supp. 3d at 1115.

### 3. Plaintiff's Response conflates detailed specificity with admissibility.

Plaintiff ignores that Epstein negotiates with the unions to determine union wages/work conditions/duties and laments that Epstein has not "observed any of these union employees performing work duties." ECF No. 56, p. 8 (Pl. Resp.). Plaintiff does not point to any portion of Epstein's declaration requiring direct, personal observation of employees' working. Epstein explained his "core responsibilities are to negotiate collective bargaining agreements with a variety of unions." ECF No. 57-4, p. 26 (Depo. 26:10–12). This gives rise to personal knowledge about the CBAs, and the employees they cover, including their job descriptions and duties. Plaintiff's further inquiries about Epstein's knowledge are outside the scope of his deposition, given the notice was limited to the contents of his declaration. ECF No. 57-4, p. 33 (Depo. 33:1–20).

Similarly, Plaintiff claims Reedy lacks personal knowledge of the work performed by Martin Marietta's employees because she "has not personally observed any of the[] union

---

[2] In addition, Martin Marietta has submitted the supplemental declaration of Cole Jacobs to establish the weight of the ready-mix trucks.

employees performing work duties." ECF No. 56, p. 6. He insists Reedy—who has personally interviewed hundreds of ready-mix driver candidates, personally observed operations, has responsibility for worker orientation, training, performance improvement, discipline, and terminations—has no personal knowledge "regarding MMM's ready-mix operations" because she "is not a ready-mix operator, transportation manager, or plant manager." ECF No. 56, p. 5. Again, Reedy does not have to do the job itself or personally observe employees at each location performing individual tasks to authenticate applicable job descriptions and testify about other work-related matters.[3]

**4. The job descriptions are particularly pertinent to job duties.**

Reedy authenticated the job descriptions that apply to various union employees at specific locations. Plaintiff has no basis to challenge her authentication, and Plaintiff offers no contrary evidence of job duties or job descriptions. And an employee's job description should be given presumptive weight to show responsibilities and essential job duties. *See Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237-1238 (9th Cir. 2012) (in ADA context, employer's identification of essential job functions are given presumptive weight, since "much of the information which determines those essential functions lies uniquely with the employer;" job descriptions are evidence of essential job duties); *Clark v. QG Printing II, LLC*, No. 1:18-cv-00899-AWI-EPG, 2020 WL 5604290, at *9 (E.D. Cal. Sept. 18, 2020) (courts look to "'objective' criteria along the lines of job titles, job duties and such" when deciding if groups of employees have rest period claims under the California Labor Code). Thus, as Martin Marietta has asserted, these documents plus the declarations show that certain union members (as presented in the partial motion for summary judgment) are commercial drivers, construction workers, and/or work at surface mines or construction sites.

### III.   ARGUMENT

**A.   The LMRA Preempts Plaintiff's Meal and Rest Period Claims Brought on Behalf of**

---

[3] Martin Marietta addresses the other "objections" to Reedy's declaration regarding ready-mix drivers and the weight of the trucks in its Reply to Plaintiff's Opposition to Defendant's Motion for Leave to Supplement Summary Judgment Evidence.

5                                                      Case No. 23-CV-00283-JSC
DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION

**Certain Union Employees.**

**1.   Meal period claims brought on behalf of union ready-mix drivers are preempted.**

Plaintiff's Opposition ignores Martin Marietta's argument that his Section 512 claims brought on behalf of commercial drivers are preempted under the LMRA. But Martin Marietta will use this as an opportunity to clarify two points.

First, as explained in Martin Marietta's Opposition to the Motion to Remand, Section 512's CBA exemption (and therefore LMRA preemption) applies regardless of FMCSA preemption. ECF No. 53, pp. 6-7; ECF No. 36, p. 6.

Second, while Plaintiff disputes Tricia Reedy has personal knowledge of the trucks' weight, specific mixing processes, and truck manufacturers, he does not dispute that the ready-mix trucks transport property and, therefore meet the definition of commercial driver contained in Section 512(g)(1). *See* ECF No. 36, p. 6; ECF No. 29, ¶ 10 (Epstein Declaration in Support of Response to Show Cause Order). Nor does he dispute (or even address) that the CBAs meet Section 512(e)'s requirements. As explained in Martin Marietta's Motion (ECF No. 36, p. 6) and Response to the Show Cause Order (ECF No. 26, pp. 17–18), the LMRA therefore preempts Plaintiff's meal period-related claims on behalf of Martin Marietta's union ready-mix drivers.

Plaintiff's Opposition does not show a genuine dispute of material fact exists as to whether his meal period claims brought on behalf of ready-mix drivers subject to CBAs 29-11, 29-12, 29-13, 29-15, 29-16, 29-19, and 29-20 are preempted under the LMRA.[4] ECF No. 36, p. 6; ECF No. 26, pp. 15-18.

**2.   Meal period claims brought on behalf of union employees in a construction *occupation* are preempted.**

Plaintiff's Opposition does not address Martin Marietta's arguments that employees subject to CBAs 29-1, 29-2, 29-3, 29-7, 29-8, 29-9, 29-17, 29-18, and 29-28 are in a construction occupation, or that the CBAs meet Section 512 and/or Wage Order 16's requirements.

---

[4] Plaintiff's Opposition also does not dispute that his claims brought on behalf of these CBAs are subject to the grievance and arbitration procedures therein. This is an independent reason to dismiss these claims.

Instead, he argues that (1) based on Epstein, Reedy, and Jacob's declarations, Martin Marietta is a "materials supplier" and not a contractor; and (2) because Epstein and Reedy have not physically seen covered employees at every location perform their job duties, they do not have sufficient knowledge to testify about job requirements.

First, Section 512's definition of "construction occupation" is not *limited* to contractors, or employees who work for businesses covered under Article 2 of Chapter 9 of Division 3 of the Business and Professions Code.[5] Instead, it broadly defines "construction occupation" as "all job classifications *associated* with construction by Article 2 (commencing with Section 7025) of Chapter 9 of Division 3 of the Business and Professions Code, *including* work involving alteration, demolition, building, *excavation*, renovation, remodeling, *maintenance*, improvement, and *repair*, and *any other similar or related occupation or trade*." Cal. Lab. Code § 512(g)(2) (emphasis added). Indeed, LMRA preemption has been applied to occupations outside of traditional "construction" occupations covered by Article 2. *See, e.g.*, *Thieroff v. Marine Spill Response Corp.*, No. CV-21-6075-DMG (MRWx), 2022 WL 2965393, at *5 (C.D. Cal. June 6, 2022) (marine oil response workers whose work involved "preventative maintenance . . . and maintenance of company spill equipment" identified as construction occupation employees under Section 512).

Here, the evidence shows that Martin Marietta's quarry employees perform functions related to excavation, demolition, and equipment maintenance at the aggregate quarries. Indeed, Plaintiff concedes as much when he argues that Martin Marietta is a materials supplier, acknowledging that the quarry employees "perform job functions related to the quarries' operations, primarily excavation and maintenance." ECF No. 56, p. 14. But Plaintiff also does not dispute certain evidence Martin Marietta provided with the Motion—the job descriptions for these employees. ECF Nos. 38-1–38-7. As explained in the Motion, and as supported by the job

---

[5] Martin Marietta does not concede or admit it is subject to the exemption outlined in Section 7052; regardless, an *employee's* qualification as construction occupation is not contingent on *Martin Marietta* being subject to Article 2 of Chapter 9 of Division 3 of the Business and Professions Code.

descriptions and declarations attached therein, these employees are within the broad definition of "construction occupation." ECF No. 36, p. 7.

Plaintiff also does not address the employees subject to CBA 29-28. And while he disputes that Reedy has personal knowledge of the grading and paving work performed therein, he does not address the CBA's express language—that the employees covered therein "are engaged in construction work." ECF 29-28, p. 1.

And, as with the commercial drivers, Plaintiff does not dispute (or even discuss) that the CBAs meet Wage Order 16's meal period exemption requirements. Instead, he briefly cites *Bearden v. U.S. Borax, Inc.*, 138 Cal. App. 4th 429, 438 (2006) for the proposition that inconsistent provisions of Wage Order 16 are invalid. But *Bearden* is not binding on this Court and ignores the federal cases cited by Defendant. Regardless, even if this Court is persuaded by *Bearden*, any Section 226.7 meal period claims are barred because, as explained above, these employees also meet Section 512's exemption. *See Giles v. Canus Corp.*, No. 22-CV-03097-MMC, 2022 WL 3370793, at *5 (N.D. Cal. Aug. 16, 2022) (holding that if an employee is exempt under section 512, such employee likewise is exempt under section 226.7).

Thus, Plaintiff's meal period claims brought on behalf of Martin Marietta's quarry employees subject to CBAs 29-1, 29-2, 29-3, 29-7, 29-8, 29-9, 29-17, 29-18 and employees subject to CBA 29-28 fail. ECF No. 36, pp. 6-9.

### 3. Rest period claims brought on behalf of certain union employees are preempted.

Ignoring the evidence and arguments presented by Martin Marietta, Plaintiff argues that because Epstein and Reedy have not physically seen covered employees at each location perform their job duties, Martin Marietta's arguments that Plaintiff's rest period claims brought on behalf of CBAs 29-2, 29-3, 29-9, and 29-28 fail. But Plaintiff does not dispute that (1) these employees are subject to Wage Order 16; or (2) the CBAs provide equivalent protections to Wage Order 16.

Specifically, Plaintiff does not dispute that the quarries are open-pit mines, or that the employees perform work on-site at the quarries. Indeed, he relies on these facts to argue Martin Marietta is not a construction company. ECF No. 56, p. 7. But, in doing so, he also does not

dispute that the employees subject to CBA 29-28 perform construction labor at various construction sites. And he does not address the contents of the CBAs, much less dispute that they provide equivalent protections.

Accordingly, Plaintiff's Opposition does not show a genuine issue of material fact exists as to whether Plaintiff's rest period claims brought on behalf of employees subject CBAs 29-2, 29-3, 29-9, and 29-28 are preempted under the LMRA and, therefore, fail.[6] ECF No. 11-12.

## B. The FMCSA Preempts Plaintiff's Meal and Rest Period Claims Brought on Behalf of Ready-Mix Drivers.

### 1. The Court should decide FMCSA preemption matters via summary judgment.

Plaintiff alleges that the Court should not decide FMCSA preemption at this juncture because FMCSA preemption does not create federal question jurisdiction. But, as explained in Defendant's Opposition to Plaintiff's Motion to Remand (ECF No. 53), the existence of FMCSA preemption weighs in favor of maintaining supplemental jurisdiction over state law claims, even if the FMCSA does not itself confer federal question jurisdiction. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 727 (1966); *Fossen v. Caring for Montanans, Inc.*, 617 F. App'x 737, 739 (9th Cir. 2015). Thus, the Court should address at summary judgment all federal preemption matters before considering remand.

### 2. Martin Marietta's ready-mix drivers are subject to the FMCSA.

Plaintiff notes that Martin Marietta did not present evidence showing ready-mix drivers "cross state lines" or that the materials being transported by Martin Marietta's ready-mix drivers cross state lines. But Plaintiff does not dispute that Martin Marietta is a federal motor carrier registered with the FMCSA, that Martin Marietta is subject to the FMCSA HOS regulations, or that ready-mix trucks are explicitly covered by the FMCSA HOS regulations. Martin Marietta located one case examining FMCSA regulations in the context of ready-mix trucks, and the Court found preemption based on the same evidence presented here without an interstate analysis. *See*

---

[6] Plaintiff's Opposition also does not dispute that his claims brought on behalf of these CBAs are subject to the grievance and arbitration procedures therein. This is an independent reason to dismiss these claims.

*Razo v. CEMEX Constr. Materials Pac., LLC*, No. 20-11175-MWF (KSx), 2021 WL 325638, at *4 (C.D. Cal. Feb. 1, 2021). Applying *Razo,* FMCSA preemption applies here.

### 3. FMCSA preemption applies regardless of union membership.

Plaintiff also argues that FMCSA preemption does not apply because Martin Marietta cannot show that all of its ready-mix drivers are subject to a CBA. But FMCSA preemption applies regardless of the existence of a CBA. *See, e.g.*, *Ayala v. U.S. Xpress Ents., Inc.*, No. EDCV 16-137-GW(KKx), 2019 WL 1986760 (C.D. Cal. May 2, 2019) (non-union employee's meal period claims preempted under FMCSA). Thus, union membership is irrelevant for FMCSA preemption purposes.

## IV. CONCLUSION

For the above reasons, as well as the reasons laid out in Martin Marietta's Motion for Partial Summary Judgment and Opposition to Plaintiff's Motion to Remand, Plaintiff's Motion for Leave to Amend should be denied.

DATED: September 21, 2023            CARRINGTON, COLEMAN, SLOMAN & BLUMENTHAL, L.L.P.

By: _____/s/ Mike Birrer_____
MIKE BIRRER
Attorneys for Defendant
MARTIN MARIETTA MATERIALS, INC.