United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AUSTIN SHWIYAT,

Plaintiff,

v.

MARTIN MARIETTA MATERIALS, INC.,

Defendant.

Case No. 3:23-cv-00283-JSC

**ORDER RE: DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 36

Austin Shwiyat filed suit against Martin Marietta Materials, Inc., alleging various California Labor Code violations pursuant to the California Private Attorney General Act ("PAGA"), California Labor Code §§ 2698–2699. (Dkt. No. 1-1.) Defendant removed this case to federal court, asserting federal question jurisdiction because some of Plaintiff's claims are completely preempted by federal law. (Dkt. No. 1.) Now pending before the Court is Defendant's motion for partial summary judgment and motion for leave to file supplemental evidence in support of its partial motion for summary judgment. (Dkt. Nos. 36, 49.) After carefully considering the briefing, and with the benefit of oral argument on December 14, 2023, the Court GRANTS IN PART Defendant's motion for partial summary judgment and GRANTS Defendant's motion to file supplemental evidence.

**BACKGROUND**

Defendant removed this PAGA action based on federal question jurisdiction, asserting at least some of Plaintiff's claims are completely preempted by § 301 of the Labor Managements Relations Act ("LMRA") (Dkt. Nos. 1) The Court issued an Order to Show Cause to Defendant to show subject matter jurisdiction (Dkt. No. 22), and, after reviewing Defendant's response (Dkt. No. 26), concluded Defendant had demonstrated LMRA complete preemption federal question

jurisdiction. (Dkt. No. 31.) Indeed, at a June 1, 2023 hearing, Plaintiff conceded "at least some of the claims for some of these allegedly aggrieved employees are preempted." (Dkt. No. 46 at 4: 2-4.) As a result, the parties agreed to dismiss from the case those claims Plaintiff agreed are preempted by the LMRA and have Defendant file a motion for partial summary judgment regarding preemption of claims on which there remained dispute. (Dkt. No. 34.)

Defendant accordingly moved for partial summary judgment, requesting the Court dismiss Plaintiff's PAGA meal, rest period, and overtime claims, and corresponding derivative claims, brought on behalf of certain union employees, on the grounds those claims are completely preempted by federal law. (Dkt. No. 36.) After Defendant moved for partial summary judgment, Plaintiff moved to remand and for leave to file an amended complaint. (Dkt. Nos. 41, 42.) Defendant also moved for leave to file supplemental evidence in support of its partial motion for summary judgment. (Dkt. No. 49.)

The Court denied Plaintiff's remand motion because Defendant had met its burden of showing some of the PAGA claims are completely preempted by the LMRA. (Dkt. No. 65.) The Court also denied Plaintiff's motion for leave to amend, finding Plaintiff's proposed amendments futile because they would not achieve Plaintiff's explicit goal to facilitate remand. (*Id.*)

However, the Court did not decide Defendant's motion for partial summary judgment or Defendant's motion for leave to file supplemental evidence because the Court questioned whether Plaintiff, a non-union employee, has standing to bring PAGA claims on behalf of unionized employees. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). After reviewing briefing from both parties, the Court concluded Plaintiff has standing to litigate whether Plaintiff's PAGA claims seeking penalties on behalf of unionized employees are preempted by federal law. (Dkt. No. 71.)

**DISCUSSION**

Defendant moves for partial summary judgment on the grounds of federal preemption of certain PAGA claims for three groups of employees: (1) meal, rest, and overtime claims, as well as derivative claims, brought on behalf of ready-mix drivers; (2) meal period claims, and derivative claims, on behalf of commercial drivers and construction employees; and (3) rest period

claims, and derivative claims, on behalf of construction employees.

## I. LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of producing evidence negating an essential element of each claim on which it seeks judgment or showing the nonmoving party cannot produce evidence sufficient to satisfy its burden of proof at trial. *Nissan Fire & Mar. Ins. Co., Ltd. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir.2000). "[T]he inferences to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Once the moving party meets its burden, the nonmoving party must show a material factual dispute exists. *California v. Campbell*, 138 F.3d 772, 780 (9th Cir.1998).

## II. EVIDENTIARY OBJECTIONS

Federal Rules of Civil Procedure Rule 56 permits objections at the summary judgment stage to evidence when "the material cited . . . cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). So, "[a]t summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial." *Nevada Dep't of Corr. v. Greene*, 648 F.3d 1014, 1019 (9th Cir. 2011) (quotations and citations omitted). However, "[a]n affidavit or declaration used to support . . . a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56.

Plaintiff objects (1) Mark Epstein lacks personal knowledge of work performed by union employees because he "has not personally observed any of these union employees performing work for the relevant period for this PAGA lawsuit," (Dkt. No. 56 at 8); (2) Tricia Reedy lacks personal knowledge as to Defendant's "ready-mix [truck] operations" and as to the work performed by Defendant's employees. (*Id.* at 9-12.)

Mark Epstein is Defendant's Senior Labor Relations Manager. (Dkt. No. 29 ¶ 1.) Mr. Epstein authenticates various collective bargaining agreements and identifies the location and type

of facility at each location relevant to those agreements. (*Id.* at ¶¶ 2-4; 10-12.) Given Mr. Epstein's job as Senior Labor Relations Manager, he has personal knowledge sufficient for this testimony as to the validity and scope of these collective bargaining agreements. *See In re Kaypro*, 218 F.3d 1070, 1075 (9th Cir. 2000) ("Personal knowledge may be inferred from a declarant's position."). Mr. Epstein also asserts he has "personal knowledge of the job duties performed" by "union workers." (*Id.* ¶ 6.) Specifically, he asserts employees at aggregate quarries "excavate stone, rocks, and gravel" (*Id.* ¶ 3); "[m]embers of the Laborers' union . . . perform manual labor around the plant such as digging trenches, helping with excavations, or picking up rocks that fall off trucks" (*Id.* ¶ 5); and certain of Defendant's employees drive "commercial motor vehicles . . . and transport property (ready mix concrete)." (Dkt. No. 29 ¶ 10.) Plaintiff objects that in his deposition, Mr. Epstein admitted he has not personally observed any of these union employees performing work duties during the relevant time periods. (Dkt. No. 57-4 at 46-49.) While Mr. Epstein lacks personal knowledge to testify as to any of the actual work performed day-by-day by specific employees, he has personal knowledge as to their duties according to the collective bargaining agreements and company job descriptions.

Tricia Reedy is a Human Resources Manager for the Defendant's Pacific Region. (Dkt. No. 38 ¶ 1.) She asserts "[t]hrough [her] years of experience providing human resources services for . . . Martin Marietta, [she has] knowledge if the ready-mix business including various regulations that would cover the company's ready mix drivers." (*Id.* ¶ 2.) Ms. Reedy explains "[a] ready-mix truck is a heavy duty vehicle used throughout the construction industry to carry ready-mixed concrete." (*Id.* ¶ 4.) She asserts "drivers of "ready-mix trucks . . . are required to have either a Class A or Class B commercial drivers' license." (*Id.* ¶¶ 4-5.) Ms. Reedy further declares "Martin Marietta is a federal motor carrier registered with the Federal Motor Carrier Safety Administration." (*Id.* ¶ 6.) Ms. Reedy also explains the job duties of various employees covered by collective bargaining agreements: some "employees work in the quarries and perform job functions related to the quarries' operations, primarily excavation and maintenance" (*Id.* ¶ 7); others have job duties that "include manual labor related to grading and paving work at the various road construction sites, such as blocking traffic and moving asphalt." (*Id.* ¶ 8.) As one of

United States District Court
Northern District of California

Defendant's human resources managers, Ms. Reedy has personal knowledge to testify to the job duties of Defendant's employees, the licensure requirements for employees, and Defendant's registration with the Federal Motor Carrier Safety Administration.

During her deposition, Ms. Reedy also specifically testified about the weight of ready-mix trucks. She stated "[a] ready-mix truck is a heavy-duty vehicle" that "weighs over 27,000 pounds, unloaded." (*Id.* ¶¶ 4-5.) However, in Ms. Reedy's deposition, Ms. Reedy indicated the way she knew the weight of the ready-mix trucks is she had "done interviews with . . . one of the transportation managers. And at one time, he told me that that's how much the trucks weigh unloaded." (Dkt. No. 57-4 at 107.) Ms. Reedy admitted she never saw the trucks weighed and never reviewed paperwork indicating the weight of the trucks. (*Id.* at 112.) The Court will not consider Ms. Reedy's conclusions as to the weight of ready-mix trucks, as Ms. Reedy lacks personal knowledge. However, the Court will consider the rest of Ms. Reedy's testimony.

## III. DEFENDANT'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL EVIDENCE

Defendant moves for leave to file supplemental evidence in support of its motion for partial summary judgment. (Dkt. No. 49.) In Defendant's original motion for summary judgment, Defendant relied on the declaration of Ms. Reedy, who stated "the ready-mix trucks weight over 27,000 pounds, unloaded." (Dkt. No. 38 ¶ 5.) After Defendant filed its motion, Plaintiff noticed the 30(b)(6) deposition of Defendant's persons most knowledgeable regarding the evidence submitted in support of Defendant's motion. (Dkt. No. 59 -1 at 2.) Defendant identified Ms. Reedy as the person most knowledgeable as to the "contents and statements" contained in both her own declaration and the declaration of Cole Jacobs. (Dkt. No. 59-3 at 1.)

As discussed above, during her deposition, when asked how she knows the weight of Defendant's ready-mix trucks, Ms. Reedy stated "at one time, [a transportation manager] told me that's how much the truck weighs unloaded" (Dkt. No. 59-4 at 107.) Ms. Reedy does not recall when she was told this. (*Id.* at 112.)

Defendant now offers a supplemental declaration of Cole Jacobs, Vice President of Sales and Market Development for Defendant, "to show that the ready-mix trucks meet the respective weight requirements." (Dkt. No. 49 at 4.) Mr. Jacobs testifies:

> While each specific ready-mix truck may weigh slightly differently due to various specifications and use frequency, Martin Marietta's ready-mix trucks (including those that were used in California) generally weigh over approximately 27,000 pounds unloaded. Fully loaded, these trucks weigh much more than 27,000 pounds and can weight up to approximately 72,000 pounds.

(Dkt. No. 50-2 ¶ 4.)

Under Federal Rule of Civil Procedure 56(e)(1), "[i]f a party fails to properly support an assertion of fact" the Court may "give an opportunity to properly support or address the fact." Defendant argues Rule 56(e)(1) provides the court "discretion to permit additional summary judgment evidence." (Dkt. No. 49 at 4.) The parties dispute what standard the Court should use in exercising that discretion: Plaintiff argues Defendant must "establish good cause" for supplementing the record with Mr. Jacobs' declaration, (Dkt. No. 58 at 8); Defendant asserts Plaintiff fails to explain why the good cause standard applies to Rule 56(e)(1), and even if the good cause standard applies, Defendant "meets the good cause standard." (Dkt. No. 61 at 6). Some courts have indicated a party's good faith is an appropriate consideration when deciding a Rule 56(e)(1) motion. *See Roosevelt Irrigation Dist. v. Salt River Project Agric. Improvement & Power Dist.*, No. 2:10-CV-00290-DAE-BGM, 2017 WL 2721437, at *3 (D. Ariz. Mar. 14, 2017) (granting a party's request to supplement the record because the request was "appropriate, relevant to the underlying issues, made in good faith, and is not unfairly prejudicial"); *George v. Nw. Mut. Life Ins. Co.*, No. C10-668-RSM, 2011 WL 3881476, at *4 (W.D. Wash. Sept. 1, 2011) (allowing party to supplement the record under Rule 56(e) because there was "no evidence" of "bad faith"). However, Plaintiff does not cite to any cases indicating Rule 56(e)(1) requires the moving party to demonstrate good cause to supplement the record. So, the Court will consider Defendant's "good faith" to be relevant to the exercise of its discretion under Rule 56(e)(1), but not dispositive.

Plaintiff opposes Defendant's motion, arguing it "represents an improper effort to supplant the binding testimony of [Defendant's] designated person most knowledgeable under Federal Rule of Civil Procedure 30(b)(6)." (Dkt. No. 58 at 2.) While "[a] corporation *generally* cannot present a theory of the facts that differs from that articulated by the designated Rule 30(b)(6) representative," that "general proposition . . . applies only where the purportedly conflicting evidence truly, and without good reason or explanation, is in conflict, *i.e.*, where it cannot be

deemed as clarifying or simply providing full context for the Rule 30(b)(6) deposition." *Snapp v. United Transportation Union*, 889 F.3d 1088, 1103 (9th Cir. 2018) (quotation marks and citations omitted). Here, the testimony of Mr. Jacobs did just that: it clarified and provided additional context to Ms. Reedy's deposition testimony.

Plaintiff also objects Mr. Jacobs lacks "personal knowledge of the actual weight of any single ready-mix truck operated by any single employee" of Defendant. (Dkt. No. 58 at 8.) Plaintiff argues Mr. Jacobs "hypothesizes that the weight of [Defendant's] ready-mix trucks exceed 27,000 pounds based upon the weight of a cubic yard of concrete," but Mr. Jacobs "does not state that he as ever weighed one of [Defendant's] ready-mix trucks or concrete" or reviewed any "documentation regarding the weight" of the trucks. (*Id.* at 8-9.) However, Mr. Jacobs testified he has "20+ years of experience in the ready-mix industry" and, as part of his job has "knowledge of the production and fleet capabilities" of ready-mix trucks. (Dkt. No. 50-2 ¶¶ 3-4.) Given Mr. Jacobs' job history and position, he has sufficient personal knowledge to testify as to the weight of ready-mix trucks. *See In re Kaypro*, 218 F.3d at 1075. Further, as will be explained later in this Order, Plaintiff has no good faith basis for disputing the trucks weigh more than 27,000 pounds.

So, the Court GRANTS Defendant's motion for leave to file supplemental evidence. The Court will consider Mr. Jacobs' declaration.

## IV. MERITS OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### A. Plaintiff's Meal, Rest, and Overtime Claims, and Derivative Claims, on behalf of Ready-Mix Drivers

Defendant seeks summary judgment over the meal, rest, and overtime claims, as well as derivative claims, Plaintiff has brought on behalf of ready-mix drivers for three reasons: (1) California's meal period requirements do not apply to Defendant's ready-mix drivers; (2) the Federal Motor Carrier Service Administration's Hours-of-Service regulations preempt California's meal and rest period rules for ready-mix drivers; and (3) California's overtime compensation requirements do not apply to Defendant's ready-mix drivers.

**1. California's Meal Period Requirements for Union Ready-Mix Drivers**

Both parties agree California Labor Code § 512 exempts "commercial driver[s]" from its meal period requirements if those employees are covered by a "valid collective bargaining agreement." Cal. Lab. Code § 512 (e)(1); (f)(2). Further, "valid collective bargaining agreement" is defined as one that:

> expressly provides for the wages, hours of work, and working conditions of employees, and expressly provides for meal periods for those employees, final and binding arbitration of disputes concerning application of its meal period provisions, premium wage rates for all overtime hours worked, and a regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate.

Cal. Lab. Code § 512 (e)(2).

Defendant seeks summary judgment over ready-mix drivers covered by the collective bargaining agreements identified at ECF Numbers 29-11, 29-12, 29-13, 29-15, 29-16, 29-19, and 29-20. (Dkt. No. 29 ¶ 10). Plaintiff does not dispute the agreements meet the requirements of Labor Code section 512(e) and (f); instead, Plaintiff urges the record evidence is insufficient to support a finding Defendant's ready-mix drivers are "commercial drivers" and fails to demonstrate all Defendant's ready-mix drivers are covered by the collective bargaining agreements.

**a. Commercial Drivers**

California Labor Code §512(g)(1) defines "commercial driver" as "an employee who operates a vehicle described in Section 260 or 462 of, or subdivision (b) of Section 15210 of, the Vehicle Code." Cal. Lab. Code § 512(g)(1). Section 260 of the Vehicle Code defines "commercial vehicle" as "a motor vehicle of a type required to be registered under this code or used or maintained for the transportation of persons for hire, compensation, or profit or designed, used or maintained primarily for the transportation of property." Cal. Veh. Code § 260. Subdivision (b)(1) of Section 15210 of the Vehicle Code defines "commercial motor vehicle" as "any vehicle . . . that requires a class A or class B license[.]" Cal. Veh. Code § 15201(b)(1).

Defendant asserts its ready-mix drivers meet "both definitions" because they "transport property (ready-mix concrete), and require either a class A or class B license to operate" ready-mix trucks. (Dkt. No. 36 at 12.) The Court agrees. Ms. Reedy attests ready-mix trucks "carry ready-mixed concrete" (Dkt. No. 38 ¶ 4), and ready-mix drivers "are required to have either a

Class A or Class B commercial drivers' license." (*Id.* ¶¶ 4-5.)

Plaintiff responds Ms. Reedy's testimony is insufficient to support a finding Defendant's ready-mix drivers require a class A or B license because Ms. Reedy is a "human resource professional" and does not have personal knowledge of the licensure requirements for ready-mix trucks. But, Ms. Reedy—as a human resource professional— has personal knowledge of job requirements for particular positions, including licensure requirements. Further, even if the Court accepts Plaintiff's argument, Plaintiff does not dispute ready-mix trucks carry ready-mix concrete; therefore, the drivers of those trucks are commercial drivers because they operate "a motor vehicle . . . designed, used or maintained primarily for the transportation of property." Cal. Veh. Code § 260. Since California Labor Code §512(g)(1) uses "or" in describing the different definitions of commercial drivers, this alone is sufficient to establish ready-mix drivers are commercial drivers.

Plaintiff also complains he was not given the opportunity to conduct discovery as to whether these ready-mix drivers do other work in addition to their ready-mix driving. Plaintiff did not file a Rule 56(d) affidavit. Fed. R. Civ. P. 56(d). And, even construing his opposition as satisfying Rule 56(d), he does not identify any good faith basis to believe the ready-mix drivers perform work outside that set forth in the proffered job descriptions and governing collective bargaining agreements. Further, even if such evidence could be developed, he has not cited any caselaw suggesting the evidence would be legally relevant to whether the drivers qualify as commercial drivers.

So, according to California law, Defendant's ready-mix drivers are commercial drivers.

#### b. Collective Bargaining Agreements for Ready-Mix Drivers

Plaintiff asserts Defendant "has not provided any evidence to establish that all of its ready-mix drivers were covered by a collective bargaining agreement as required by Section 512." (Dkt. No. 56 at 15.) But Plaintiff fails to explain any deficiency in the collective bargaining agreements Defendant cited or in any way explain how Defendant's proof is lacking. At oral argument, Plaintiff was also unable to describe what discovery he would need to make such a showing.

***

Thus, the Court GRANTS Defendant's partial motion for summary judgment as to

Plaintiff's PAGA meal-period claims on behalf of ready-mix drivers covered by the collective bargaining agreements identified at ECF Numbers 29-11, 29-12, 29-13, 29-15, 29-16, 29-19, and 29-20. Defendant has established its ready-mix drivers are commercial drivers with a qualifying collective bargaining agreement according to California Labor Code § 512, thus, those ready-mix drivers are exempt from California's meal-period requirements under § 512.

**2. Whether the Federal Motor Carrier Safety Act Preempts Ready-Mix Drivers' Rest Period Claims**

The Federal Motor Carrier Safety Administration ("FMCSA") has concluded California's rest break rules contained in California Labor Code § 512 are preempted by the FMCSA's Hours-of-Service regulations "as applied to property-carrying commercial motor vehicle (CMV) drivers covered by the FMCSA's hours of service regulations." California's Meal and Rest Break Rules for Commercial Motor Vehicle Drivers; Petition for Determination of Preemption, 83 Fed. Reg. 67470-01 (Dec. 28, 2018); *see also Int'l Bhd. of Teamsters, Loc. 2785 v. Fed. Motor Carrier Safety Admin.*, 986 F.3d 841, 849 (9th Cir.), *cert. denied sub nom. Trescott v. Fed. Motor Carrier Safety Admin.*, 142 S. Ct. 93 (2021) (upholding the FMCSA's preemption determination).

Defendant's ready-mix drivers are "property-carrying commercial motor vehicle (CMV) drivers." As described above, Defendant has established ready-mix drivers meet the definition for "commercial driver" under § 512(g)(1). Moreover, Mark Epstein testified ready-mix drivers transport property, namely, ready-mix concrete. (Dkt. No. 29 ¶ 10.) Finally, "[r]eady-mixed concrete delivery vehicle[s]" are specifically mentioned in the FMCSA hours-of-service regulations. *See* 49 C.F.R. § 395.1(t). Plaintiff argues Defendant's evidence is insufficient to establish "that its ready-mix drivers were commercial drivers" because Mr. Epstein "has not actually observed union employees performing their job duties during the relevant time period for this PAGA action." (Dkt. No. 56 at 15, 16.) However, for the reasons stated above, the Court denies Plaintiff's objection Mr. Epstein lacks personal knowledge. Plaintiff fails to raise any genuine issue of material fact as to whether Defendant's ready-mix drivers are "property-carrying commercial drivers."

Plaintiff also urges the FMCSA regulations do not preempt Plaintiff's claims because the

FMCSA regulations only apply to commercial drivers who operate in interstate commerce; so, if "the transportation takes place within a single state," then the California rest period claims are not preempted by the FMCSA regulations. (Dkt. No. 56 at 15.) Since Defendant has presented no evidence its ready-mix drivers ever cross state lines, Plaintiff asserts Defendant has not established the federal hours-of-service regulations preempt any of the ready-mix drivers' rest period claims. *See* 49 C.F.R. § 390.3(a)(1) ("The FMCSA hours-of-service regulations apply to "all employers, employees, and commercial motor vehicles that transport property or passengers in interstate commerce."); *Reich v. Am. Driver Serv., Inc.*, 33 F.3d 1153, 1155 (9th Cir. 1994) ("Any motor carrier that engages in interstate commerce is subject to the Secretary of Transportation's jurisdiction, *see* 49 U.S.C. § 10521. . . [E]ven a minor involvement in interstate commerce as a regular part of an employee's duties can subject that employee to the Secretary of Transportation's jurisdiction. . . Nevertheless, an employee's minor involvement in interstate commerce does not necessarily subject that employee to the Secretary of Transportation's jurisdiction for an unlimited period of time [citations] and if the employee's minor involvement can be characterized as de minimis, that employee may not be subject to the Secretary of Transportation's jurisdiction at all.") (citations omitted).

Defendant responds it "is a federal motor carrier registered with the Federal Motor Carrier Safety Administration." (Dkt. No. 38 ¶ 6). According to Defendant, this is sufficient to establish the FMCSA preempts Plaintiff's rest period claims on behalf of ready-mix drivers. *See also Razo v. Cemex Constr. Materials Pac., LLC et al.*, No. CV-2011-175-MWF-KSX, 2021 WL 325638, at *4 (C.D. Cal. Feb. 1, 2021) (finding FMCSA preemption of ready-mix drivers' claims even though the defendant provided no evidence any of defendant's employees ever operated in interstate commerce because the defendant itself was covered by the FMCSA regulations). But Defendant has not provided any evidence or argument as to what it means to be "registered" with the FMCSA and how such registration satisfies the interstate commerce requirement. So, Defendant has not yet established its ready-mix drivers are subject to FMCSA regulations.

Of note, Plaintiff cites *Valiente v. Swift Transportation Company of Arizona, LLC*, for the proposition commercial drivers who work exclusively in California are not covered by federal

hours-of-service regulations. No. 219-CV-04217-VAP-KKX, 2020 WL 8812885, at *2 (C.D. Cal. Apr. 24, 2020). In *Valiente*, the defendant moved for judgment on the pleadings based on FMCSA preemption of the plaintiffs' claims. *Id.* at *1. The court held the "FMCSA's hours of service regulations expressly apply only to drivers operating in interstate commerce." *Id.* at *2. Since the complaint did not allege the plaintiffs drove in interstate commerce, the court held the FMCSA's regulations did not preempt California labor law. However, the Ninth Circuit's decision in that same case recognized FMCSA preemption applies "with respect to truck drivers subject to federal regulations." *Valiente v. Swift Transportation Co. of Arizona, LLC*, 54 F.4th 581, 583 (9th Cir. 2022).

As the parties' submissions do not sufficiently address the question as to what interstate commerce nexus is required for FMCSA preemption, and thus whether it is satisfied on this record, Defendant's motion is DENIED as to Plaintiff's rest period claims brought on behalf of ready-mix drivers.

**3. California's Overtime Compensation Requirements for Ready-Mix Drivers**

Plaintiff's complaint alleges "Plaintiff and Aggrieved Employees were not properly paid for overtime hours worked despite routinely and consistently working more than 8 hours per day and 40 hours per week in violation of the California Labor Code." (Dkt. No. 1-1 ¶ 10.) Plaintiff does not connect any specific provisions of California's Labor Code to his overtime claim—either in his complaint or his response to Defendant's motion for summary judgment. (*Id.*) However, in his complaint, when pleading his PAGA claim, Plaintiff asserts he is entitled to civil penalties according to "California Labor Code §§ 203, 204, 510, 512, 1174, 1194, and 1198." (*Id.* ¶ 30.) Of those provisions, California Labor Code § 510 addresses overtime requirements.

"In California, wage and hour claims are governed by two sources of authority: provisions of the Labor Code, enacted by the Legislature, and a series of wage orders, adopted by the Industrial Welfare Commission." *Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1068 (9th Cir. 2020) (citing *Troester v. Starbucks Corp.*, 421 P.3d 1114, 1119). "California's 'wage orders are to be accorded the same dignity as statutes.'" *Id.* at 1070 (quoting *Troester*, 421 P.3d at 1119).

United States District Court
Northern District of California

Defendant insists Wage Order 4 governs its ready-mix drivers.

California's Industrial Welfare Commission's Wage Order 4-2001 ("Wage Order 4") provides overtime pay requirements for "all persons employed in professional, technical, clerical, mechanical, and similar occupations." Cal. Code Regs., tit. 8, §§ 11040(1), (3)(A). While California Labor Code § 510 provides overtime compensation requirements, California Labor Code § 515 explains the Industrial Welfare Commission can maintain "an exemption from provisions regulating hours of work that was contained in a valid wage order in effect in 1997" and the commission "may review, retain, or eliminate an exemption from provisions regulating hours of work that was contained in a valid wage order in effect in 1997." Cal. Lab. Code § 515(b). Wage Order 4 has been in effect since 1988, so Wage Order 4 provides an exemption to California Labor Code § 510. *See* Cal. Code Regs. tit. 8, § 11040 (1988, vol. 19.)." Further, the overtime compensation requirements of Wage Order 4 "are not applicable to employees whose hours of service are regulated by:" (1) the FMCSA "Hours of Service of Drivers" regulations; or (2) "Title 13 of the California Code of Regulations, subchapter 6.5, Section 1200, and the following sections, regulating hours of drivers." *Id.* § 11040(3)(K). Plaintiff does not dispute Wage Order 4 applies to ready-mix drivers but argues Defendant has not established either exemption applies. (*See* Dkt. No. 56 at 16-18.)

As discussed above, Defendant has not established as a matter of law its ready-mix drivers are subject to the FMCSA hours-of-service regulations. So, that exemption has not been demonstrated.

However, Defendant's ready-mix drivers fall under the second exemption of Wage Order 4: "Title 13 of the California Code of Regulations, subchapter 6.5, Section 1200" applies to certain vehicles, including "commercial motor vehicle[s] with a gross vehicle weight rating of 26,001 or more pounds." Cal. Veh. Code § 34500(k). For purposes of this section, "commercial motor vehicle" is defined as "any vehicle . . . that requires a class A or class B license[.]" Cal. Veh. Code § 15201(b)(1). Defendant's ready-mix trucks have a gross vehicle weight rating of over 26,0001 pounds (Dkt. No. 50-2 ¶ 4), and require a Class A or B driver's license. (Dkt. No. 38 ¶¶ 4-5.)

Plaintiff contends Defendant has only established the ready-mix trucks "generally weigh over approximately 27,000 pounds unloaded," (Dkt. No. 50-2 ¶ 4), so Defendant has failed to establish *all* their ready-mix trucks have a gross vehicle weight rating of over 26,0001 pounds. However, under California law, "gross vehicle weight rating" is "the weight specified by the manufacturer as the loaded weight of a single vehicle." Cal. Veh. Code § 350(a). Defendant has established ready-mix trucks carry concrete, and weigh "up to approximately 72,000 pounds" fully loaded. (Dkt. No. 50-2 ¶ 4.) As before, Plaintiff complains he has not had sufficient opportunity to conduct discovery. But, he took a 30(b)(6) deposition of Defendant. And, more importantly, as was established at oral argument, he has no good faith basis for believing additional discovery will dispute Defendant's evidence as to the loaded weight of the ready-mix trucks. There is no genuine dispute each ready-mix truck's gross vehicle weight rating exceeds 26,001 pounds.

So, neither California Labor Code § 510 nor Wage Order 4 provide a basis for Plaintiff's overtime claims on behalf of ready-mix drivers. Plaintiff does not cite to any other California Labor Code provision providing a basis for those claims. Defendant's motion for summary judgment is GRANTED as to Plaintiff's overtime claims on behalf of ready-mix drivers.

**4. Derivative Claims for Ready-Mix Drivers**

The Court GRANTS summary judgment on Plaintiff's meal and overtime claims brought on behalf of ready-mix drivers and DENIES summary judgment on Plaintiff's rest period claims on behalf of ready-mix drivers. So, the Court also DENIES summary judgment on Plaintiff's derivative claims for failure to maintain and provide accurate time and payroll wages and failure to timely pay wages upon separation, as these claims may be derivative of the rest period claims rather than of the dismissed claims.

**B. Meal Period Claims, and Derivative Claims, on behalf of Construction Employees**

The parties agree California's meal period requirements do not apply to "an employee employed in a construction occupation" if covered by a qualifying collective bargaining agreement.[1] Cal. Lab. Code § 512(e)-(f)(1). Defendant asserts the collective bargaining

[1] Wage Order 16-2001 ("Wage Order 16") also provides meal period requirements, along with an

agreements identified by ECF Numbers 29-1, 29-2, 29-3, 29-7, 29-8, 29-9, 29-17, and 29-18 cover quarry employees who "are employed in a construction occupation." Defendant also asserts the collective bargaining agreement identified by ECF Number 29-28 covers employees who perform grading and paving work on road construction sites, therefore those employees are also employed in a construction occupation.

California's Labor Code defines "construction occupation" as:

> [A]ll job classifications associated with construction by Article 2 (commencing with Section 7025) of Chapter 9 of Division 3 of the Business and Professions Code, including work involving alteration, demolition, building, excavation, renovation, remodeling, maintenance, improvement, and repair, and any other similar or related occupation or trade.

Cal. Lab. Code. § 512(g)(2).

Plaintiff does not contest the validity of these collective bargaining agreements. Instead, Plaintiff argues Defendant is a "materials supplier and not a contractor," so Defendant's employees do not fall under the construction occupation definition. (Dkt. No. 56 at 12.) He cites to California Business and Professions Code § 7052 which states the chapter "does not apply to any person who only furnishes materials or supplies without fabricating them into, or consuming them in the performance of, the work of a contractor." Cal. Bus. & Prof. Code § 7052. However, Cal. Lab. Code. § 512(g)(2) refers to "Article 2 (commencing with Section 7025) of Chapter 9 of Division 3 of the Business and Professions Code." Cal. Lab. Code. § 512(g)(2). Article 2 of Chapter 9 of Division 3 of the Business and Professions Code, titled "Application of Chapter," consists of Sections 7025 to 7035. *See* Cal. Bus. & Prof. Code div. 3, ch. 9., art. 2. Article 3 of Chapter 9 of Division 3 of the Business and Professions code is titled "Exemptions" and consists of sections 7040 to 7054.5. *See* Cal. Bus. & Prof. Code div. 3, ch. 9., art. 3. So, the "supplier"

---

exemption for "any employee covered by a valid collective bargaining agreement, so long as the agreement meets certain requirements." Cal. Code Regs. tit. 8, § 11160(10)(E). Plaintiff does not argue Wage Order 16 provides the basis for his meal period claims, but instead asserts "Section 512 [of the California Labor Code] controls over any inconsistent provisions of the Wage Order 16." (Dkt. No. 56 at 18.) So, Plaintiff has waived any meal period claims based on Wage Order 16, and the Court will proceed by analyzing Plaintiff's meal period claims based on California Labor Code § 512 exclusively.

exemption Plaintiff cites is not relevant to the definition of "construction occupation" in California Labor Code § 512(g)(2).

Moreover, California Labor Code § 512 exempts the individual "employee employed in a construction occupation," not a construction employer as a whole—a distinction that is particularly relevant given other subsections refer to various "industr[ies]," suggesting they apply to the categorization of the employer's work, rather than the employee's individual categorization. Cal. Lab. Code § 512(f)(1). So, it is irrelevant that Defendant as a company is a materials supplier—what matters is whether the particular jobs of particular employees covered by qualifying collective bargaining agreements meet the statutory definition of "a construction occupation." § 512(f)(1).

Defendant has established the collective bargaining agreements identified by ECF Numbers 29-1, 29-2, 29-3, 29-7, 29-8, 29-9, 29-17, 29-18, and 29-28 cover employees who "are employed in a construction occupation." At oral argument, Plaintiff conceded employees subject to the collective bargaining agreement identified at ECF No. 29-8 are employed in a construction occupation. The collective bargaining agreements identified by ECF Numbers 29-1, 29-2, 29-3, 29-7, 29-8, 29-9, 29-17, and 29-18 cover "aggregate quarries" which are "above ground mine[s]" where "employees excavate stone, rocks, and gravel." (Dkt. No. 39 ¶ 3.) These individuals may "operate[e] or repair[] the heavy equipment" in the quarry or "perform manual labor around the plant, such as digging trenches, helping with excavations, or picking up rocks that fall off trucks." (*Id.* ¶ 5.) All these employees work on-site. (*Id.* ¶ 12.) All of this work "involve[es] alteration, demolition, building, excavation, renovation, remodeling, maintenance, improvement," or "repair," so all of it qualifies as a construction occupation under the California Labor Code. Cal. Lab. Code. § 512(g)(2).

While Plaintiff asserts "[Defendant]'s assertion that its union employees are employed in a construction occupation is superficial at best" (Dkt. No. 56 at 19), Plaintiff does not identify any evidence to dispute these employees work construction jobs. And, as recounted above, Plaintiff did not file a Rule 56(d) affidavit and has not otherwise identified what evidence could create a genuine dispute. Finally, at oral argument Plaintiff conceded if the "suppliers" exemption from

California Business & Professions Code § 7052 does not apply to the construction workers definition, then these unionized employees are "construction workers" according to California Labor Code § 512(g)(2). So, Defendant's evidence that employees subject to the collective bargaining agreements identified by ECF Numbers 29-1, 29-2, 29-3, 29-7, 29-8, 29-9, 29-17, 29-18, and 29-28 are employed in a "construction occupation" is undisputed.

The Court GRANTS Defendant's motion for summary judgment as to Plaintiff's PAGA meal period claims on behalf of employees subject to the collective bargaining agreements identified by ECF Numbers 29-1, 29-2, 29-3, 29-7, 29-8, 29-9, 29-17, 29-18, and 29-28. Moreover, the Court GRANTS Defendant's motion for summary judgment as to Plaintiff's PAGA claims that are derivative of these meal period claims.

### C. Rest Period Claims, and Derivative Claims, on behalf of Construction Employees

Plaintiff alleges "Defendant required Plaintiff and Aggrieved Employees to work through . . . rest periods." (Dkt. No. 1-1 ¶ 9.) Plaintiff further asserts "[p]ursuant to California law, an employee is entitled to . . . three ten-minute rest periods if required to work more than ten hours." (*Id.* ¶ 14.) Plaintiff does not cite to any specific California Labor Code statute for his rest break claims, either in his complaint or briefing papers. Defendant asserts Wage Order 16-2001 ("Wage Order 16"), which regulates "Wages, Hours and Working Conditions for Certain On-Site Occupations in the Construction, Drilling, Logging and Mining Industries," provides the basis for Plaintiff's rest period claims. Cal. Code Regs. tit. 8, § 11160. Since the main purpose of Defendant's business is "mining," (Dkt. No. 40 ¶ 2 ("As a national company, Martin Marietta's primary focus is the mining of aggregate materials (including sand, gravel, crushed stone, etc.)"), Wage Order 16 applies to Defendant. Plaintiff does not dispute these rest period claims are based on Wage Order 16.

Wage Order 16 provides for "ten (10) minutes net rest time for every four (4) hours worked, or major fraction thereof." *Id.* § 11160(A); *see also* Cal. Lab. Code § 226.7(b) ("An employer shall not require an employee to work during a meal or rest or recovery period mandated pursuant to, an . . . order of the Industrial Welfare Commission."). The Order applies to "all



United States District Court
Northern District of California

persons employed in the on-site occupations of "construction," "drilling," and "mining." Cal. Code Regs. tit. 8, § 11160(1).

Wage Order 16 contains an exemption for its rest period requirements if an employee is subject to a valid collective bargaining agreement with "equivalent protection." *Id.* § 11160(11)(E). Defendant seeks summary judgment on Plaintiff's PAGA rest period claims on behalf of employees subject to the collective bargaining agreements identified by ECF Numbers 29-2, 29-3, 29-9, and 29-28, asserting these individuals are "employed in the on-site occupations of construction," "drilling," or "mining," so the exemption to Wage Order 16's rest period requirements applies to these individuals. Cal. Code Regs. tit. 8, § 11160(1).

Defendant has established employees subject to the collective bargaining agreements identified by ECF Numbers 29-2, 29-3, 29-9, and 29-28 are subject to Wage Order 16. As discussed above, at oral argument Plaintiff conceded employees subject to the collective bargaining agreement identified at ECF No. 29-8 are employed in a construction occupation—meaning Wage Order 16 applies to their conduct. Moreover, Wage Order 16 defines "mining" occupations as "miners, and other associated and related occupations . . . required to engage in excavation or operations above or below ground." Cal. Code Regs. tit. 8, § 11160(2)(L). The collective bargaining agreements identified by ECF Numbers 29-2, 29-3, 29-9 cover "aggregate quarries" which are "above ground mine[s]" where "employees excavate stone, rocks, and gravel," and therefore cover employees working in mining operations. (Dkt. No. 39 ¶ 4.) This work all qualifies as on-site occupations of "construction" or "mining."

Plaintiff does not dispute the relevant collective bargaining agreements provide "equivalent protection[s]" to Wage Order 16. However, Plaintiff argues Wage Order 16's exemption does not apply because Defendant "failed to present admissible evidence based on personal knowledge sufficient to establish LMRA preemption of rest period claims." (Dkt. No. 56 at 19.) Specifically, Plaintiff asserts Defendant's declarants "neither witnessed workers perform their job duties during the relevant time period" nor were present at "the relevant facilities during the relevant time period." (*Id.* at 20.) But, again, Plaintiff presents no evidence to dispute that these employees are "employed in the on-site occupations of construction," "drilling," or "mining." Cal. Code Regs.

tit. 8, § 11160(1). And, Plaintiff has not submitted a Rule 56(d) affidavit seeking to stay the summary judgment proceedings until Plaintiff can conduct further discovery, nor identified a good faith basis for believing discovery will create a genuine dispute of material fact. So, Defendant's evidence about the job duties of these employees is undisputed.

The Court GRANTS Defendant's motion for summary judgment as to Plaintiff's PAGA rest period claims on behalf of employees subject to the collective bargaining agreements identified by ECF Numbers 29-2, 29-3, 29-9, and 29-28. The Court also GRANTS Defendant's motion for summary judgment as to Plaintiff's PAGA claims that are derivative of these rest period claims, including "failure to maintain accurate time records, failure to provide accurate wage statements, and failure to pay all wages owed upon separation." (Dkt. No. 36 at 18.)

**CONCLUSION**

For the above reasons, the Court rules as follows:

- Defendant's motion for leave to file supplemental evidence is GRANTED.
- Summary judgment on PAGA meal and overtime claims brought on behalf of ready-mix drivers subject to the collective bargaining agreements identified by ECF Numbers 29-11, 29-12, 29-13, 29-15, 29-16, 29-19, and 29-20 is GRANTED.
- Summary judgment on PAGA rest claims on behalf of ready-mix drivers is DENIED.
- Summary judgment on the PAGA derivative claims on behalf of ready-mix drivers is DENIED in light of the denial of the claim based on rest breaks.
- Summary judgment as to PAGA meal period claims on behalf of employees subject to the collective bargaining agreements identified by ECF Numbers 29-1, 29-2, 29-3, 29-7, 29-8, 29-9, 29-17, 29-18, and 29-28 is GRANTED.
- Summary judgment as to Plaintiff's PAGA claims that are derivative of these meal period claims is also GRANTED.
- Summary judgment as to Plaintiff's PAGA rest period claims on behalf of employees subject to the collective bargaining agreements identified by ECF Numbers 29-2, 29-3, 29-9, and 29-28 is GRANTED.
- Summary judgment as to PAGA claims that are derivative of these rest period claims,

including failure to maintain accurate time records, failure to provide accurate wage statements, and failure to pay all wages owed upon separation, is GRANTED.

Discovery is open. The Court will hold an initial case management conference on January 11, 2024 A joint case management conference statement is due January 4, 2024.

This Order disposes of Docket Numbers: 36, 49.

**IT IS SO ORDERED.**

Dated: December 20, 2023

JACQUELINE SCOTT CORLEY
United States District Judge

United States District Court
Northern District of California